IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 1:07-CR-233-ODE |
| DIONNE BEVERLY et al. : | |

**SENTENCING MEMORANDUM**

Comes now the United States through counsel David E. Nahmias, United States Attorney, and Robert C. McBurney and Cassandra J. Schansman, Assistants, and submits the following sentencing memorandum.

OVERVIEW

On October 29, 2008, this Court will be sentencing ten of the defendants in this case for their involvement in the Black Mafia Family (BMF) cocaine distribution conspiracy. As described in greater detail in the Presentence Investigation Reports (PSRs), the Government's prosecution of the BMF drug ring spans several districts and involves over 100 defendants. This nationwide investigation has already yielded dozens of sentences, some of which provide potentially useful benchmarks for the upcoming proceedings before this Court.

Because of the scope of the BMF's drug operations and the number of defendants who will be sentenced next week, the Government believes that a written discussion of two interrelated issues -- role and relative culpability -- could

1

prove useful for the Court as it considers what the proper dispositions should be for each defendant. While the Sentencing Guidelines are an instructive and necessary source of information for the Court, the points set forth below should add some context to the numbers and calculations contained in the PSRs.

## ARGUMENT

1. Relevant benchmarks.

Two of the clearest benchmarks are the recent 30 year sentences handed down to Demetrius and Terry Flenory in the Eastern District of Michigan (EDMI). The Flenory brothers were the undisputed leaders of the BMF drug empire. They directed the conspiracy in all its aspects, from the importation of cocaine from Mexico to its distribution across the United States to the disposition of the proceeds to the many members of the organization. None of the Atlanta defendants is similarly situated. Defendant Daniels, who was convicted at trial but is not being sentenced on October 29, 2008, is the only defendant in the Atlanta case who regularly consorted with one of the Flenory brothers in connection with the group's drug dealing.[1]

Also instructive is the 180 month sentence received by Chad Brown, another EDMI defendant and one of the BMF's top drug lieutenants. With the exception of

---

[1] Defendant McKnight did have regular contact with Demetrius Flenory, but his interactions typically concerned his efforts to establish himself (and BMF's entertainment business) as a legitimate source of hip hop music.

defendants Daniels and McKnight, and possibly defendant Green, none of the defendants in the Atlanta case was as senior in the BMF hierarchy as defendant Brown. Thus, while other factors -- e.g., an extensive criminal history, such as Defendant Pitts possesses -- may well justify a sentence for an Atlanta BMF defendant that is higher than defendant Brown's, participation in the cocaine conspiracy alone should not.[2]

2. <u>Role in the offense</u>.

One of the main issues that will be argued at sentencing as to several of the defendants[3] is the question of their role in the offense. Resolving this question is a two-step process. First, the Court should determine the relevant conduct: what is the quantity of cocaine for which a particular defendant is being held accountable? Second, what was that defendant's connection to and control over that quantity of cocaine. If the defendant is being held accountable <u>only</u> for the quantity of cocaine

---

[2] Defendant Hall has filed a motion in which he points to certain "statistics" concerning sentences received by co-conspirators in related cases here and in other jurisdictions. (Doc 387). In the motion, Hall asserts that the "most culpable" defendants were prosecuted in EDMI, leaving this Court with mere underlings. (<u>Id.</u> at 3). Such a claim is misleading, at best. While it is true that the two heads of the drug conspiracy -- the Flenory brothers -- were prosecuted in EDMI, so too were dozens of "order takers," money counters, money launderers, couriers, and other underlings. Indeed, the lower sentences to which Hall points are simply a reflection of that fact: they were meted out to defendants who played a much lesser role, cooperated, qualified for a safety valve reduction, pled to a lesser offense, or otherwise qualified for more lenient treatment. While the Government agrees that Hall is not as culpable as the Flenorys or Chad Brown (indeed, that is one of the points of this memo), that concession does <u>not</u> mean that Hall (or anyone else to be sentenced next week) is thus automatically moved to the lowest rung of the culpability ladder.

[3] It appears that this issue may exist for defendants Beverly, Fields, Hall, Hammonds, Nash, and Pitts.

that he or she personally and directly sold, transported, packaged, "cut" or otherwise handled, then there should be a presumption that minor role does <u>not</u> apply.  See <u>United States v. DeVaron</u>, 175 F.3d 930 (11th Cir. 1999).

For several of the defendants, who elected to admit in their plea colloquys to a discrete quantity of cocaine for which they were personally and directly responsible, minor role is not appropriate.  For example, defendants Beverly, Fields, and Nash all sought to limit the quantity of cocaine attributable to them to those instances in which they personally and directly possessed, transported, and ultimately distributed cocaine.  The Government opposes minor role for defendants in this posture.

For those defendants, such as Hall, Hammonds, McKnight, Pitts, Shaw, and Taylor, who pled guilty to participating in the overall conspiracy, the question of minor role is more complex.  Their pleas were open-ended, in that the defendants did not seek to cabin their responsibility to a fixed quantity of cocaine.  For them, the second step of the role inquiry is more critical.  The strength of their connection to and control over the drugs assessed as relevant conduct should determine whether minor role is appropriate.  For defendants such as Pitts and Shaw -- who are being held responsible for kilograms of cocaine they directly possessed and sold -- or Hall, who is liable only for those drugs he personally unpacked, stored, and ultimately handed to customers, no role adjustment is

4

proper. In contrast, those defendants who may not have known the quantity of drugs they transported or whose contact with and control over the contraband was fleeting at best have a stronger basis for a claim to a minor role.

3. Relative culpability.

Assessing relative culpability is perhaps the most difficult part of the sentencing process in this case. The defendants are a diverse bunch, in particular because of their different connections to the BMF's cocaine business. Some -- defendants Daniels and McKnight[4] -- were in the BMF's inner circle. Others -- for example Beverly, Pitts, and Shaw -- were customers of the BMF, rather than members. Still others -- Fields, Mitchell, and Nash -- worked for senior BMF members and assisted them in distributing cocaine. All of the defendants, however, were part of the overall drug distribution conspiracy, either as a dealer or a worker, and have admitted as much. The critical question is where in the hierarchy of culpability does each defendant fall?

Assuming that the evil being punished is the distribution of cocaine out into our communities and the attendant harm that that illegal business causes, the defendants can be assessed a relative culpability ranking derived from the quantity of cocaine for which they are responsible and the degree of their control over or

---

[4] Defendant Hall deserves honorable mention for membership in this first group, having lived in various Flenory homes and having jetted cross-country with Demetrius Flenory and another senior BMF member in a private jet paid for with Flenory's drug money.

connection to that cocaine. The more cocaine a defendant helped move through the supply chain, and the stronger that defendant's connection to that movement, the greater his or her ultimate culpability.

Given that metric, the Government has arrayed the defendants across a series of culpability frontiers:



Using quantity as one axis (a measure of the scope of relevant conduct) and control as the other axis (a measure of a defendant's control over or strength of connection to that quantity of cocaine), one can draw a series of concentric arcs, using the

point of zero quantity, zero control as the center. The further the arc, or frontier, from the zero point, the greater the culpability. Every point on that arc is equidistant from the zero point, meaning that the arc maps a series of points of equal culpability. This demonstrates graphically how, given those two variables (quantity and control), a defendant connected only weakly to a large quantity of cocaine has similar culpability to a defendant with strong control over a smaller amount of cocaine.

The point of this exercise is not to assign an absolute term of years to each defendant based on his or her position on the graph. Rather, it is to provide a demonstrative aid for the Court as it grapples with the relative culpability of the various defendants. Each defendant had a role to play in the BMF's drug distribution enterprise. Some defendants (Hall, Hammonds, Taylor) had contact with hundreds of kilograms of cocaine, with an overall street value of tens of millions of dollars. Their contact, however, was limited to moving bricks of cocaine here or there, and not actually selling it to a dealer or user. Others (Pitts, Shaw, Beverly, Nash) controlled much less cocaine, but were <u>directly</u> responsible for pushing their quantity of illegal drugs deeper into the community.

CONCLUSION

Sentencing the disparate defendants in the BMF-Atlanta case is a complex process that will require the Court to weigh many variables. Some useful

benchmarks have already been established through the prosecution and sentencing of related defendants in other Districts. The Government has identified those relevant persons and has also sought to assist the Court in assessing the relative culpability of the Atlanta defendants. Lastly, the Sentencing Guidelines, as applied in the PSRs, provide an additional source of insight into what sentence similarly situated defendants should receive.

Respectfully submitted this 24th day of October, 2008.

>DAVID E. NAHMIAS
>UNITED STATES ATTORNEY
>
>/s/ *CASSANDRA J. SCHANSMAN*
>ASSISTANT U. S. ATTORNEY
>Georgia Bar #183184
>
>/s/ *ROBERT C. McBURNEY*
>ASSISTANT U.S. ATTORNEY
>Georgia Bar #481070
>
>600 U.S. Courthouse
>75 Spring Street, S.W.
>Atlanta, GA 30303
>V: 404-581-6000
>F: 404-581-6181

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 1:07-CR-233-ODE |
| DIONNE BEVERLY et al. : | |

## CERTIFICATE OF SERVICE

This is to certify that the Government has this day caused notice of the Government's Sentencing Memorandum to be served on the Defendants' counsel of record by causing a copy of same to be filed with the District's electronic filing system.

This 24th day of October, 2008.

/s/ *ROBERT C. McBURNEY*
ASSISTANT U.S. ATTORNEY

9